IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PEANUTS WORLDWIDE LLC,<br><br>　　　　Plaintiff,<br><br>v.<br><br>THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",<br><br>　　　　Defendants. | Case No. 20-cv-07286<br><br>**Judge Jorge L. Alonso**<br><br>**Magistrate Judge Jeffrey Cummings** |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER, INCLUDING A TEMPORARY INJUNCTION, A TEMPORARY ASSET RESTRAINT, AND EXPEDITED DISCOVERY**

　　　　Plaintiff Peanuts Worldwide LLC ("Plaintiff") submits this Memorandum in support of its *Ex Parte* Motion for Entry of a Temporary Restraining Order ("TRO"), including a temporary injunction, a temporary asset restraint, and expedited discovery (the "*Ex Parte* Motion").

# TABLE OF CONTENTS

I.  INTRODUCTION AND SUMMARY OF ARGUMENT .......................................................... 1

II. STATEMENT OF FACTS ................................................................................................. 2

    A. Plaintiff's Trademarks, Copyrights and Products ............................................................. 2

    B. Defendants' Unlawful Activities ...................................................................................... 4

III. ARGUMENT ....................................................................................................................... 4

    A. Standard for Temporary Restraining Order and Preliminary Injunction ......................... 6

    B. Plaintiff Will Likely Succeed on the Merits .................................................................... 7

        i.  Plaintiff Will Likely Succeed on Its Trademark Infringement, Counterfeiting, and False Designation of Origin Claims. .................................................................... 7

        ii. Plaintiff Is Likely to Succeed on Its Copyright Infringement Claim ..................... 9

    C. There Is No Adequate Remedy at Law, and Plaintiff Will Suffer Irreparable Harm in the Absence of Preliminary Relief .................................................................................. 10

    D. The Balancing of Harms Tips in Plaintiff's Favor, and the Public Interest Is Served by Entry of the Injunction ................................................................................................... 11

IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE ............................................. 12

    A. A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of the PEANUTS Trademarks and Peanuts Copyrighted Designs Is Appropriate .................................................................................................................... 12

    B. Preventing the Fraudulent Transfer of Assets Is Appropriate ....................................... 13

    C. Plaintiff Is Entitled to Expedited Discovery .................................................................. 14

V.  A BOND SHOULD SECURE THE INJUNCTIVE RELIEF ............................................ 15

VI. CONCLUSION .................................................................................................................. 15

## MEMORANDUM OF LAW

I.  INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff Peanuts Worldwide LLC ("Plaintiff") is requesting temporary *ex parte* relief based on an action for trademark infringement, counterfeiting, false designation of origin, and copyright infringement against the defendants identified on Schedule A to the Complaint (collectively, the "Defendants"). As alleged in Plaintiff's Complaint, Defendants are promoting, advertising, marketing, distributing, offering for sale, and selling products using infringing and counterfeit versions of Plaintiff's federally registered trademarks, unauthorized copies of Plaintiff's federally registered copyrighted designs, or both (collectively, the "Unauthorized Peanuts Products") through at least the fully interactive e-commerce stores[1] operating under the seller aliases identified in Schedule A to the Complaint (the "Seller Aliases").

Defendants run a sophisticated counterfeiting operation and have targeted sales to Illinois residents by setting up and operating e-commerce stores using one or more Seller Aliases through which Illinois residents can purchase Unauthorized Peanuts Products. The e-commerce stores operating under the Seller Aliases share unique identifiers establishing a logical relationship between them. Further, Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their operation. Plaintiff is forced to file this action to combat Defendants' counterfeiting of its registered trademarks and infringement of its registered copyrights, as well as to protect unknowing consumers from purchasing Unauthorized Peanuts Products over the Internet. Defendants' ongoing unlawful activities should be restrained, and Plaintiff respectfully requests that this Court issue *ex parte* a Temporary Restraining Order.

---

[1] The e-commerce store urls are listed on Schedule A to the Complaint under the Online Marketplaces.

II.   STATEMENT OF FACTS

   A.   Plaintiff's Trademarks, Copyrights and Products

Over seventy years ago, Charles M. Schulz introduced a brand-new comic strip with an unlikely round-headed hero, "Good ol' Charlie Brown," and the PEANUTS comic strip was born.  From its humble beginnings in just seven U.S. newspapers, the PEANUTS comic strip grew to a syndicated daily and Sunday comic strip that ran from October 2, 1950, to February 13, 2000, and it continues in reruns.  The PEANUTS comic strip is not only one of the best-loved comic strips in history, but a true global phenomenon.  *See* Declaration of Carrie J. Dumont (the "Dumont Declaration") at ¶ 4.  Today, the PEANUTS comic strip is featured in global online syndication and in thousands of newspapers worldwide; in classic television specials and in new streaming series; and in mobile apps, stage productions, feature films, and books.  PEANUTS has also inspired theme park attractions and public art projects. In 2018, Plaintiff partnered with NASA on a multi-year Space Act Agreement designed to inspire a passion for space exploration and STEM among the next generation of students with new original streaming series starring Astronaut Snoopy to in-school STEM-based curriculum about America's latest explorations into deep space.  For fans everywhere, happiness *is* PEANUTS.  *Id.* at ¶ 6.  In addition to DVDs of the classic television specials and PEANUTS comic strips, a variety of licensed PEANUTS products are available, including:  games and other toys such as playsets, playing cards, and stuffed toys; household items such as holiday ornaments, bathroom products, stationery and bed linens; clothing and jewelry (collectively, the "PEANUTS Products").  *Id.* at ¶ 7.

Long before Defendants' acts described herein, Plaintiff (through its predecessor-in-interest United Feature Syndicate Inc. and licensees) launched the PEANUTS comic strip and television show and its related line of PEANUTS Products bearing its famous PEANUTS mark, SNOOPY mark, CHARLIE BROWN mark, and various copyrighted designs (the "Peanuts

Copyrighted Designs"). *Id.* at ¶ 9. Plaintiff (through its predecessor-in-interest United Feature Syndicate Inc. and licensees) has used the PEANUTS and other trademarks for many years and has continuously sold products under PEANUTS and other trademarks (collectively, the "PEANUTS Trademarks"). *Id.* at ¶ 10. Several of the PEANUTS Trademarks are registered with the United States Patent and Trademark Office. *Id.* at ¶ 11. The PEANUTS Products typically include at least one of the registered PEANUTS Trademarks and/or the Peanuts Copyrighted Designs. *Id.* at ¶ 10.

The U.S. registrations for the PEANUTS Trademarks are valid, subsisting, and in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. *Id.* at ¶ 12. The PEANUTS Trademarks are distinctive when applied to the PEANUTS Products, signifying to the purchaser that the products come from Plaintiff and are manufactured to Plaintiff's quality standards. *Id.* at ¶ 13. The registrations for the PEANUTS Trademarks constitute *prima facie* evidence of their validity and of Plaintiff's exclusive right to use the PEANUTS Trademarks pursuant to 15 U.S.C. § 1057(b). The PEANUTS Trademarks are famous marks, as that term is used in 15 U.S.C. § 1125(c)(1). *Id.* at ¶ 14.

Plaintiff has expended substantial time, money, and other resources in advertising, promoting and marketing featuring the PEANUTS Trademarks. *Id.* at ¶ 15. As a result, products bearing the PEANUTS Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Plaintiff. *Id.*

Plaintiff has registered its Peanuts Copyrighted Designs with the United States Copyright Office. The registrations include, but are not limited to: "Peanuts" (U.S. Copyright Registration No. B 197-759), issued by the Register of Copyrights on February 18, 1977 and renewed as RE 723-431 on February 20, 1996; "Peanuts; sculpture. By Determined Productions, Inc." (U.S.

Copyright Registration No. GP 59-162), issued by the Register of Copyrights on January 12, 1968 and renewed as RE 753-956 on April 8, 1997; and "Colorful World of Snoopy, Linus, Schroeder, Lucy and Charlie Brown" (U.S. Copyright Registration No. A 95-985), issued by the Register of Copyrights on October 1, 1968 and renewed as RE 738-848 on November 21, 1996. *Id.* at ¶ 17. Among the exclusive rights granted to Plaintiff under the U.S. Copyright Act are the exclusive rights to reproduce, prepare derivative works of, distribute copies of, and display the Peanuts Copyrighted Designs to the public.

### B. Defendants' Unlawful Activities

The success of the PEANUTS brand has resulted in its significant counterfeiting. *Id.* at ¶ 18. Consequently, Plaintiff has a worldwide brand protection program and regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. *Id.* In recent years, Plaintiff has identified numerous fully interactive e-commerce stores, including those operating under the Seller Aliases, which were offering for sale and/or selling Unauthorized Peanuts Products to consumers in this Judicial District and throughout the United States. *Id.*

Plaintiff's well-pleaded allegations regarding registration patterns, similarities among the e-commerce stores operating under the Seller Aliases and the Unauthorized Peanuts Products for sale thereon, and common tactics employed to evade enforcement efforts establish a logical relationship among the Defendants and that Defendants are interrelated. *Id.* at ¶¶ 21–28. If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

### III. ARGUMENT

Defendants' purposeful, intentional, and unlawful conduct is causing and will continue to cause irreparable harm to Plaintiff's reputation and the goodwill symbolized by the PEANUTS

4

Trademarks and the Peanuts Copyrighted Designs. Rule 65(b) of the Federal Rules of Civil Procedure provides that the Court may issue an *ex parte* TRO where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. Fed. R. Civ. P. 65(b). The entry of a TRO is appropriate because it would immediately stop the Defendants from benefiting from the sale of Unauthorized Peanuts Products, their wrongful use of the PEANUTS Trademarks and/or copying and distribution of the Peanuts Copyrighted Designs, and preserve the status quo until a hearing can be held.

In the absence of a TRO without notice, the Defendants can and likely will register new e-commerce stores under new aliases and move any assets to off-shore bank accounts outside the jurisdiction of this Court. *See* Declaration of Justin R. Gaudio (the "Gaudio Declaration") at ¶¶ 5–11. Courts have recognized that civil actions against counterfeiters present special challenges that justify proceeding on an *ex parte* basis. See *Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infringing merchandise are often useless if notice is given to the infringers"). As such, Plaintiff respectfully requests that this Court issue the requested *ex parte* TRO.

This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, the Copyright Act 17 U.S.C. § 501, *et seq.*, 28 U.S.C. §§ 1338(a)–(b), and 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391.

This Court may properly exercise personal jurisdiction over Defendants since Defendants directly target their business activities toward consumers in the United States, including Illinois, through at least the fully interactive e-commerce stores operating under the Seller Aliases. Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-

commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold Unauthorized Peanuts Products to residents of Illinois. *See* Complaint at ¶¶ 2, 22, 24–25, 32. *See, e.g., Christian Dior Couture, S.A. v. Lei Liu et al.,* 2015 U.S. Dist. LEXIS 158225, at *6 (N.D. Ill. Nov. 17, 2015) (personal jurisdiction proper over defendants offering to sell alleged infringing product to United States residents, including Illinois; no actual sale required). Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

### A. Standard for Temporary Restraining Order and Preliminary Injunction

District Courts within this Circuit hold that the standard for granting a TRO and the standard for granting a preliminary injunction are identical. *See, e.g. Charter Nat'l Bank & Trust v. Charter One Fin., Inc.*, No. 1:01-cv-00905, 2001 WL 527404, at *1 (N.D. Ill. May 15, 2001) (citation omitted). A party seeking to obtain a preliminary injunction must demonstrate: (1) that its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that it will suffer irreparable harm if the injunction is not granted. *See Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).

If the Court is satisfied that these three conditions have been met, then it must consider the harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Id.* Finally, the Court must consider the potential effect on the public interest (non-parties) in denying or granting the injunction. *Id.* The Court then weighs all of these factors, "sitting as would a chancellor in equity," when it decides whether to grant the injunction. *Id.* (quoting *Abbott Labs. v. Mead Johnson & Co.,* 971 F.2d 6, 11 (7th Cir. 1992)). This process involves engaging in what

the Court has deemed "the sliding scale approach" – the more likely the plaintiff will succeed on the merits, the less the balance of harms need favor the plaintiff's position. *Id*.

### B. Plaintiff Will Likely Succeed on the Merits

#### i. <u>Plaintiff Will Likely Succeed on Its Trademark Infringement, Counterfeiting, and False Designation of Origin Claims.</u>

A defendant is liable for trademark infringement and counterfeiting under the Lanham Act if it, "without the consent of the registrant, use[s] in commerce any reproduction, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods … which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). A Lanham Act trademark infringement claim has two elements. *See* 15 U.S.C. § 1125(a). First, plaintiff must show "that its mark is protected under the Lanham Act." *Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1043 (7th Cir. 2000). Second, a plaintiff must show that the challenged mark is likely to cause confusion among consumers. *Id*.

Plaintiff's PEANUTS Trademarks are inherently distinctive and are registered with the United States Patent and Trademark Office. The PEANUTS Trademarks have been continuously used and never abandoned. Dumont Declaration at ¶¶ 11, 14. The registrations for the PEANUTS Trademarks constitute *prima facie* evidence of their validity and of Plaintiff's exclusive right to use the PEANUTS Trademarks pursuant to 15 U.S.C. § 1057(b). Furthermore, Plaintiff has not licensed or authorized Defendants to use any of the PEANUTS Trademarks, and none of the Defendants are authorized retailers of genuine PEANUTS Products. *Id.* at ¶ 21. Thus, Plaintiff satisfies the first element of its Lanham Act claim.

The Seventh Circuit has held that where "one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a

presumption of a likelihood of confusion." *Microsoft Corp. v. Rechanik*, 249 F. App'x 476, 479 (7th Cir. 2007). Accordingly, the Court can presume a likelihood of confusion from Defendant's use of the PEANUTS Trademarks. The result is the same when considered in light of the Seventh Circuit's seven enumerated factors to determine whether there is a likelihood of confusion, which include: (1) similarity between the marks in appearance and suggestion; (2) similarity of the products/services; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of complainant's mark; (6) actual confusion; and, (7) intent of the defendants to palm off their products as that of another. *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008). No one factor is dispositive, but the similarity of the marks, actual confusion, and the defendant's intent are "particularly important." *Id.*

Plaintiff has submitted extensive documentation showing that Defendants are selling Unauthorized Peanuts Products that look similar to genuine PEANUTS Products and use infringing and counterfeit marks identical to the PEANUTS Trademarks. Defendants sell products using the PEANUTS Trademarks to the same consumers that are targeted by Plaintiff. Dumont Declaration at ¶¶ 20–21. Those consumers are diverse with varying degrees of sophistication, and they are likely to have difficulty distinguishing genuine PEANUTS Products from Unauthorized Peanuts Products. Indeed, it appears that Defendants are intentionally trying to induce consumers to purchase Unauthorized Peanuts Products. In that regard, Defendants advertise Unauthorized Peanuts Products using the PEANUTS Trademarks and/or copying the Peanuts Copyrighted Designs. Dumont Declaration at ¶¶ 21–22. Evidence of actual consumer confusion is not required to prove that a likelihood of confusion exists, particularly given the compelling evidence that Defendants are attempting to "palm off" their goods as genuine PEANUTS Products. *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 685

(7th Cir. 2001). Accordingly, Plaintiff is likely to establish a *prima facie* case of trademark infringement, counterfeiting, and false designation of origin.

    ii.  <u>Plaintiff Is Likely to Succeed on Its Copyright Infringement Claim</u>

The United States Copyright Act provides that "[a]nyone who violates any of the exclusive rights of the copyright owner … is an infringer of the copyright." 17 U.S.C. § 501. Among these exclusive rights granted to Plaintiff under the Copyright Act are the exclusive rights to reproduce, prepare derivative works of, distribute copies of, and display the Peanuts Copyrighted Designs to the public. 17 U.S.C. § 106.

To establish a claim for copyright infringement, a plaintiff must show: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *JCW Invs., Inc. v. Novelty, Inc.*, 482 F.3d 910, 914 (7th Cir. 2007) (internal citations omitted). Copying can be shown through direct evidence, or it can be inferred where a defendant had access to the copyrighted work and the accused work is substantially similar. *Spinmaster, Ltd. v. Overbreak LLC*, 404 F. Supp. 2d 1097, 1102 (N.D. Ill. 2005). To determine whether there is a substantial similarity that indicates infringement, Courts use the "ordinary observer" test which asks whether "an ordinary reasonable person would conclude that the defendant unlawfully appropriated protectable expression by taking material of substance and value." *Id.* A work may be deemed infringing if it captures the "total concept and feel of the copyrighted work." *Id.*

With respect to the first element, Plaintiff is the owner of at least three relevant federally registered copyrights. As to the second element, Defendants are willfully and deliberately reproducing the Peanuts Copyrighted Designs in their entirety, and are willfully and deliberately distributing copies of the Peanuts Copyrighted Designs to the public by sale. Defendants' unauthorized copies are identical or substantially similar to the Peanuts Copyrighted Designs.

9

Such blatant copying infringes upon Plaintiff's exclusive rights under 17 U.S.C. §§ 106. As such, Plaintiff has proved it has a reasonable likelihood of success on the merits for its copyright infringement claim.

### C. There Is No Adequate Remedy at Law, and Plaintiff Will Suffer Irreparable Harm in the Absence of Preliminary Relief

The Seventh Circuit has "clearly and repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy." *Re/Max N. Cent., Inc. v. Cook,* 272 F.3d 424, 432 (7th Cir. 2001) (citing *Eli Lilly & Co. v. Natural Answers, Inc.,* 233 F.3d 456, 469 (7th Cir. 2000)). Likewise, an injury to a copyright holder that is "not easily measurable in monetary terms, such as injury to reputation or goodwill, is often viewed as irreparable." *EnVerve, Inc. v. Unger Meat Co.,* 779 F. Supp. 2d 840, 844 (N.D. Ill. 2011). Irreparable injury "almost inevitably follows" when there is a high probability of confusion because such injury "may not be fully compensable in damages." *Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.*, 560 F.2d 1325, 1332 (7th Cir. 1977) (citation omitted). "The most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods." *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.,* 846 F.2d 1079, 1092 (7th Cir. 1988). As such, monetary damages are likely to be inadequate compensation for such harm. *Ideal Indus., Inc. v. Gardner Bender, Inc.,* 612 F.2d 1018, 1026 (7th Cir. 1979).

Defendants' unauthorized use of the PEANUTS Trademarks has and continues to irreparably harm Plaintiff through diminished goodwill and brand confidence, damage to Plaintiff's reputation, loss of exclusivity, and loss of future sales. Dumont Declaration at ¶¶ 29–33. The extent of the harm to Plaintiff's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are both irreparable and incalculable, thus warranting

an immediate halt to Defendants' infringing activities through injunctive relief. *See Promatek Industries, Ltd. v. Equitrac Corp.,* 300 F.3d 808, 813 (7th Cir. 2002) (finding that damage to plaintiff's goodwill was irreparable harm for which plaintiff had no adequate remedy at law). Plaintiff will suffer immediate and irreparable injury, loss, or damage if an *ex parte* TRO is not issued in accordance with Federal Rule of Civil Procedure 65(b). Dumont Declaration at ¶ 34.

### D. The Balancing of Harms Tips in Plaintiff's Favor, and the Public Interest Is Served by Entry of the Injunction

As noted above, if the Court is satisfied that Plaintiff has demonstrated (1) a likelihood of success on the merits, (2) no adequate remedy at law, and (3) the threat of irreparable harm if preliminary relief is not granted, then it must next consider the harm Defendants will suffer if preliminary relief is granted, balancing such harm against the irreparable harm that Plaintiff will suffer if relief is denied. *Ty, Inc.*, 237 F.3d at 895. As willful infringers, Defendants are entitled to little equitable consideration. "When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994). This is because "[o]ne who adopts the mark of another for similar goods acts at his own peril since he has no claim to the profits or advantages thereby derived." *Burger King Corp. v. Majeed,* 805 F. Supp. 994, 1006 (S.D. Fla. 1992) (internal quotation marks omitted). Therefore, the balance of harms "cannot favor a defendant whose injury results from the knowing infringement of the plaintiff's trademark." *Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n.,* 929 F. Supp. 473, 478 (D.D.C. 1996).

As Plaintiff has demonstrated, Defendants have been profiting from the sale of Unauthorized Peanuts Products. Thus, the balance of equities tips decisively in Plaintiff's favor. The public is currently under the false impression that Defendants are operating their e-

11

commerce stores with Plaintiff's approval and endorsement. In this case, the injury to the public is significant, and the injunctive relief Plaintiff seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' actions. As such, equity requires that Defendants be ordered to cease their unlawful conduct.

## IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE

The Lanham Act authorizes courts to issue injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark …." 15 U.S.C. § 1116(a).

### A. A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of the PEANUTS Trademarks and Peanuts Copyrighted Designs Is Appropriate

Plaintiff requests a temporary injunction requiring Defendants to immediately cease all use of the PEANUTS Trademarks or substantially similar marks, and/or copying and distribution of the Peanuts Copyrighted Designs on or in connection with all e-commerce stores operating under the Seller Aliases. Such relief is necessary to stop the ongoing harm to the PEANUTS Trademarks and associated goodwill, as well as harm to consumers, and to prevent the Defendants from continuing to benefit from their unauthorized use of the PEANUTS Trademarks and/or copying and distribution of the Peanuts Copyrighted Designs. The need for *ex parte* relief is magnified in today's global economy where counterfeiters can operate anonymously over the Internet. Plaintiff is currently unaware of both the true identities and locations of the Defendants, as well as other e-commerce stores used to distribute, sell and offer to sell Unauthorized Peanuts Products. Many courts have authorized immediate injunctive relief in similar cases involving trademark counterfeiting and infringement. *See, e.g., Deckers Outdoor*

*Corporation v. The Partnerships, et al.,* No. 15-cv-3249 (N.D. Ill. April 4, 2015) (unpublished) (Order granting *Ex Parte* Motion for Temporary Restraining Order).

### B. Preventing the Fraudulent Transfer of Assets Is Appropriate

Plaintiff requests an *ex parte* restraint of Defendants' assets so Plaintiff's right to an equitable accounting of Defendants' profits from sales of Unauthorized Peanuts Products is not impaired.[2] Issuing an *ex parte* restraint will ensure Defendants' compliance. If such a restraint is not granted in this case, Defendants may disregard their responsibilities and fraudulently transfer financial assets to overseas accounts before a restraint is ordered. Specifically, on information and belief, the Defendants in this case hold most of their assets in off-shore accounts, making it easy to hide or dispose of assets, which will render an accounting by Plaintiff meaningless.

Courts have the inherent authority to issue a prejudgment asset restraint when plaintiff's complaint seeks relief in equity. *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007). In addition, Plaintiff has shown a strong likelihood of succeeding on the merits of its trademark infringement and counterfeiting claim, so according to the Lanham Act 15 U.S.C. § 1117(a)(1), Plaintiff is entitled, "subject to the principles of equity, to recover … defendant's profits." Similarly, Plaintiff has shown a strong likelihood of succeeding on the merits of its copyright infringement claim, and therefore Plaintiff is entitled to recover "… any profits of the infringer that are attributable to the infringement." 17 U.S.C. § 504(b). Plaintiff's Complaint seeks, among other relief, that Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts. Therefore, this Court

---

[2] Plaintiff has filed a Motion for Leave to File Under Seal certain documents for this same reason.

has the inherent equitable authority to grant Plaintiff's request for a prejudgment asset freeze to preserve relief sought by Plaintiff.

The Northern District of Illinois in *Lorillard Tobacco Co. v. Montrose Wholesale Candies* entered an asset restraining order in a trademark infringement case brought by a tobacco company against owners of a store selling counterfeit cigarettes. *Lorillard*, 2005 WL 3115892, at *13 (N.D. Ill. Nov. 8, 2005). The Court recognized that it was explicitly allowed to issue a restraint on assets for lawsuits seeking equitable relief. *Id.* (citing *Grupo Mexicano de Desarollo, S.A. v. Aliance Bond Fund*, 527 U.S. 308, 325 (1999)). Because the tobacco company sought a disgorgement of the storeowner's profits, an equitable remedy, the Court found that it had the authority to freeze the storeowner's assets. *Id.*

Plaintiff has shown a likelihood of success on the merits, an immediate and irreparable harm suffered as a result of Defendants' activities, and that, unless Defendants' assets are frozen, Defendants will likely hide or move their ill-gotten funds to off-shore bank accounts. Accordingly, an asset restraint is proper.

### C. Plaintiff Is Entitled to Expedited Discovery

The United States Supreme Court has held that "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Vance v. Rumsfeld*, No. 1:06-cv-06964, 2007 WL 4557812, at *6 (N.D. Ill. Dec. 21, 2007) (quoting *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S. Ct. 2380 (1978)). Courts have wide latitude in determining whether to grant a party's request for discovery. *Id.* (citation omitted). Further, courts have broad power over discovery and may permit discovery in order to aid in the identification of unknown defendants. *See* Fed. R. Civ. P. 26(b)(2)).

Plaintiff respectfully requests expedited discovery to discover bank and payment system accounts Defendants use for their counterfeit sales operations. The expedited discovery

14

requested in Plaintiff's Proposed TRO is limited to include only what is essential to prevent further irreparable harm. Discovery of these financial accounts so that they can be frozen is necessary to ensure that these activities will be contained. *See, e.g., Deckers Outdoor Corporation v. The Partnerships, et al.,* No. 15-cv-3249 (N.D. Ill. April 4, 2015) (unpublished). Plaintiff's seizure and asset restraint may have little meaningful effect without the requested relief. Accordingly, Plaintiff respectfully requests that expedited discovery be granted.

### V. A BOND SHOULD SECURE THE INJUNCTIVE RELIEF

The posting of security upon issuance of a TRO or preliminary injunction is vested in the Court's sound discretion. *Rathmann Grp. v. Tanenbaum,* 889 F.2d 787, 789 (8th Cir. 1989). Because of the strong and unequivocal nature of Plaintiff's evidence of counterfeiting, trademark infringement, copyright infringement, and false designation of origin, Plaintiff respectfully requests this Court require Plaintiff to post a bond of no more than ten thousand U.S. dollars ($10,000.00). *See, e.g., Deckers Outdoor Corporation v. The Partnerships, et al.,* No. 15-cv-3249 (N.D. Ill. April 4, 2015) (unpublished) ($10,000 bond).

### VI. CONCLUSION

Defendants' unlawful operations are irreparably harming Plaintiff's business, its famous PEANUTS brand, and consumers. In view of the foregoing and consistent with previous similar cases, Plaintiff respectfully requests that this Court enter a TRO in the form submitted herewith.

Dated this 11th day of December 2020.     Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Allyson Martin
Isaku M. Begert
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080 / 312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
amartin@gbc.law
ibegert@gbc.law

*Counsel for Plaintiff Peanuts Worldwide LLC*